## In re PEILER.
### Patent Appeal No. 3001.

Court of Customs and Patent Appeals.
Dec. 19, 1932.

Vernon M. Dorsey, of Washington, D. C. (S. F. Parham, of Washington, D. C., and L. G. Bates, of Hartford, Conn., of counsel), for appellant.

T. A. Hostetler, of Washington, D. C., for Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

HATFIELD, Associate Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the decision of the Primary Examiner rejecting claims 2, 3, and 15 of appellant's application for a patent for an alleged invention relating to improvements in the method of feeding molten glass, particularly to the method of selectively and variably controlling the weight and shape of successive mold charges of glass by changing the upper and lower limits of the stroke of a reciprocating plunger. The application discloses an apparatus for carrying out the involved method.

Claim 15 is illustrative. It reads: "In the art of feeding molten glass in a regular succession of mold charges of definite shape and weight, the method which comprises superimposing molten glass upon a discharge outlet, reciprocating a discharge-controlling implement in the glass above said outlet in

such a manner as to form an annular passage for the glass moving toward said outlet and with a stroke selected as to its upper position so as to determine the quantity of glass issuing upon each discharge, and selected as to its lower position so as to determine the shape of each discharged mass of glass, and producing mold charges of different weight by changing the upper limit of the stroke of said implement."

The involved application, filed March 14, 1922, was copending with another application of appellant relating to a method of, and an apparatus for, feeding molten glass, filed May 5, 1919, which matured into patent No. 1,655,391, January 3, 1928.

The rejection of the involved claims by the Board of Appeals was based solely on the ground of double patenting in view of appellant's issued patent No. 1,655,391.

In its decison, the Board of Appeals stated that the Peiler patent No. 1,655,391 contained numerous references to changing the weight and shape of mold charges of glass by variations in the movements of the plunger; that adjustments of the apparatus, which would support the involved claims, were so disclosed in the specification of the patent as to convey the impression that the involved method was one of the important features of that invention. The board was of opinion that the method defined by the appealed claims was covered by method claim 1 of the patent; that method claims 10, 13, and 17 involved controlling the shape of mold charges; that method claim 12 involved increasing the weight of such charges by extrusive pressure of the plunger; that apparatus claims 57 and 58 involved controlling the shape of such charges by varying the timing of the extrusive impulses of the plunger; and that apparatus claim 59 related specifically to adjusting the upper and lower limits of the stroke of the plunger, which, together with other adjustments, controlled the size and shape of mold charges. The board concluded its opinion by holding that, considering the claims—method and apparatus—of the patent as a whole, they defined substantially the same invention as that here involved and differed from the appealed claims in scope and unpatentable variations only.

In his brief, the solicitor for the Patent Office contends that the invention defined by the appealed claims is substantially the same as the invention defined in method claims 10, 37, 39, and 47 of the Peiler patent. It is conceded by counsel for appellant that the involved method was disclosed, but it is contended that it was not claimed, in the Peiler patent.

■■ The first question requiring our consideration is whether the method defined by the appealed claims was claimed in the Peiler patent. If it was, appellant is not entitled to a second patent for the same invention. If it was not, we must then proceed to determine whether the invention defined by the appealed claims is patentably distinct from the invention claimed in the Peiler patent. If the involved invention, although disclosed, was not claimed in the patent, and if if is patentably distinct from the invention therein claimed, appellant is entitled to a patent, and the decision of the Board of Appeals must be reversed. In re Peiler, 48 F.(2d) 405, 18 C. C. P. A. 1102, and cases cited.

Preliminary to a comparison and discussion of the involved claims and those contained in the Peiler patent, it may be helpful to refer briefly to the specification of the patent. It discloses an apparatus having, as stated in the specification, "the necessary mechanical movements and adjustments, and cooperating with a conduit projecting from a glass furnace, from which the molten glass is thus delivered in mold charges to an associated molding or shaping machine." One of the many features of that apparatus is a gate for regulating the glass flow. In operation, the gate is raised to the proper point to maintain the desired head of glass over the outlet. The glass issues from the outlet, as stated in the specification, "under the combined influence of gravity and the action of the impeller, which times and controls its accumulation in gathers which are successively suspended from the outlet ring and from the impeller end. For each complete reciprocation of the impeller there is a reciprocation of the shears which sever a mold charge from each suspended gather. After each severing operation the freshly cut end or stub remaining below the outlet and forming the lower end of the succeeding gather, is moved upwardly or its downward movement is retarded by the action of the impeller." The impeller acts upon the glass partly by displacement and partly by adhesion of the glass to it. The downward movement of the impeller gives an extrusive impulse to the glass issuing from the outlet and increases its rate of discharge. The upward movement of the impeller tends to retard the discharge of glass from the outlet. The glass issues from the outlet at, at least, three different rates of speed: First, at a

rate slower than gravity during the upward stroke of the plunger; second, at a rate determined by gravity, while the plunger pauses at the limit of its upward stroke; third, at an increased rate during the downward stroke of the plunger.

The extrusive impulse of the plunger, in proportion to its extent and strength, increases the diameter of the glass suspended below the outlet. The strength of that impulse may be varied by changing the size, the length of the stroke, and the working position, of the plunger. By making an adjustment in the apparatus of the patent, the extrusive impulse may be made to come earlier, which tends, according to the specification, to increase the diameter of the entire body of the charge rather than the diameter of its upper end only. By retarding the downward impulse of the plunger, the upper end only of the suspended glass is enlarged. By extending the downward impulse, which may be done by lengthening the stroke of the plunger, both the body and the upper end of the suspended glass are enlarged. The patentee stated that a "faster downward stroke of shorter duration increases the strength of the impulse but applies it locally to a more limited portion of the gather. The decrease in diameter of the gather due to its elongation by gravity may thus be compensated for to any extent."

From what has been said, it is evident that a variety of effects may be obtained by varying the downward and upward movements of the plunger, and that the basic scheme of the patent is to increase or retard the rate of flow of glass from the outlet so that the shape and size of compact mold charges appropriate to the particular molds to be fed may be controlled. The acceleration and retardation of the flow through the outlet is primarily controlled by reciprocating the discharge controlling implement—the plunger—toward and from the outlet.

Claim 1 of the patent defines a method of delivering compact mold charges of molten glass "of shape and weight appropriate to the particular molds to be fed, which method comprises superimposing a sufficient head of molten glass, of proper viscosity for suspension in mold-charge masses, upon a delivery orifice of a proper contour and area to permit the feeding of charges appropriate to the molds to be fed, and, for each mold charge, discharging the glass through said orifice, reciprocating a discharge-controlling implement toward and from said orifice to determine selectively the shape of the dis-charged glass suspended beneath said orifice, and severing a mold charge from the discharged glass before the shape imparted to the discharged glass is .lost and before the discharged glass receives any substantial under-support."

It will be observed that claim 1 defines a method of controlling both the shape and weight of mold charges by "superimposing a sufficient head of molten glass, of proper viscosity, * * * upon a delivery orifice of a proper contour and area to permit the feeding of charges appropriate to the molds to be fed," and, by reciprocating the .plunger toward and from the outlet, the shape of the discharged glass is selectively determined.

It is contended by counsel for appellant that the weight of mold charges, referred to in that claim, is determined solely by "superimposing a sufficient head of molten glass, of proper viscosity for suspension in mold-charge masses, upon a delivery orifice of a proper contour and area," and is uninfluenced, so far as that claim is concerned, by the movements of the plunger.

It may be observed that, in the normal operation of the apparatus disclosed and claimed in the patent, a sufficient head of molten glass of proper viscosity over an outlet of proper contour and area is always necessary. Furthermore, as the extrusive impulse of the plunger increases the rate of discharge of the glass from the outlet, and, in proportion to the extent and strength of such impulse, increases the diameter of the glass suspended below the outlet, it is evident, we think, that claim 1 of the patent is sufficiently broad to include controlling both the weight and shape by the movements of the plunger. That claim does not specify that the weight is controlled by one means and the shape by another, and such limitations ought not to be read into it.

Claim 10 of the patent defines a method of forming mold charges of molten glass of predetermined and controlled shapes appropriate to the molds to be fed, "which comprises extruding molten glass through an outlet submerged in a glass supply, *and so varying the extrusive pressure applied above the outlet,* during the extrusion of the charge, and in accordance with the desired cross-sections of the charge at different points along its length, as to impart the desired contour to the charge." (Italics ours.)

Having in mind the basic scheme of the patent hereinbefore explained, it is obvious that, if the extrusive pressure applied above the outlet is varied, that is to say, if the

strength of the extrusive impulse of the plunger is increased or decreased, the diameter of the suspended glass will be, increased or decreased in proportion to the extent or strength of such extrusive impulse, and, accordingly, both the weight and the shape of the glass will be affected.

Claim 12 of the patent defines a method of forming mold charges of molten glass. It "comprises causing glass to flow downwardly through a discharge opening submerged by the parent body of glass, applying intermittent extrusive impulses to the glass above the opening to increase its rate of discharge from the said opening, and, after each impulse, severing a mold charge from the glass at a level spaced below the said opening while the discharged glass is hanging freely below the opening."

That claim relates to the application of extrusive impulses to the glass over the outlet to increase its rate of discharge, and, also, to the severing of the mold charges. The method of forming mold charges is broadly claimed, and involves the basic scheme of the patent which is to control the weight and shape of mold charges by increasing or decreasing the diameter of the glass suspended below the outlet, including either the body or the upper end, or both, of the suspended glass, in proportion to the extent, strength, and timing of the extrusive impulse of the plunger.

Claim 17 of the patent defines a method of forming mold charges "of controlled shape appropriate to the molds in which they are to be fabricated, that comprises discharging the glass through said outlet under the control of a reciprocating implement which accelerates the discharge of the glass to a sufficient extent and at the proper time to shape the glass, while hanging below said outlet, into an elongated mass at least as great as a mold charge."

Again, the patentee claimed a method involving the control of the discharge of the molten glass by the movements of the plunger. The discharge of the glass is accelerated to a sufficient extent and at the proper time to shape it into an elongated mass "at least as great as a mold charge"; that is to say, that, by controlling the movements of the plunger, not only the shape, but a sufficient amount of glass to make proper mold charges, is obtained.

In each of the above-mentioned claims of the patent, the movements of the plunger are claimed broadly and include, not only varying its movements, but its working positions

as well. Obviously, then, those claims are sufficiently broad to include any variation in the stroke of the plunger disclosed in the specification of the patent, including any selected limit of its upward, or downward, stroke, for the precise purposes stated in the appealed claims, that is, for controlling the shape and weight of mold charges.

It is contended, however, by counsel for appellant that the gist of the appealed claims is the control of the weight of mold charges by "regulation of the frictional resistance in the annular passage surrounding the plunger," and that this feature was not included in any of the claims of the Peiler patent.

We have been unable to find such a limitation in the appealed claims. Nevertheless, it may be said that, as the plunger acts upon the glass partly by displacement and partly by adhesion of the glass to it, and as the downward movement of the plunger increases, and its upward movement tends to retard, the rate of discharge of the glass from the outlet, the frictional resistance in the annular passage surrounding the plunger in the normal operation of the apparatus, disclosed and claimed in the patent, is regulated by the positions and movements of the plunger.

Claim 39 of the patent claims a method of forming mold charges of appropriate *size* and *shape* to the molds in which they are to be fed, which, according to the claim, comprises discharging glass "downwardly around an implement and through a passage having a discharge outlet, moving the implement downwardly in the glass toward the outlet, during the discharge of each mold charge, so *as to increase the resistance to the movement of glass in said passage, but at such speed as to accelerate the discharge of the glass through said outlet notwithstanding such increased resistance, and thereafter, and after sufficient glass has been discharged to form a mold charge, moving the implement upwardly so as to decrease the resistance to the movement of the glass in said passage, but at such speed as to retard the discharge of glass through the outlet passage notwithstanding such decreased resistance.*" (Italics ours.)

Claim 39 defines a method of controlling the weight and shape of mold charges, which comprises regulating the frictional resistance in the passage above the outlet by varying the positions and movements of the plunger. It would seem to be obvious that, even if it could be argued that the patentee did not specifically claim the method of controlling

the weight and shape of mold charges by regulating the frictional resistance in the passage around—the annular passage surrounding—the plunger, by varying the positions and movements of the plunger, claim 39 is sufficiently broad to include such method.

It has been suggested that, if properly construed, the appealed claims define a method whereby the weight may be changed without at the same time changing the shape of the mold charges, and that no such method was claimed in the Peiler patent.

It may be that the apparatus disclosed in the application might be so adjusted and operated as to make it possible to change the shape without at the same time changing the weight, or to change the weight without at the same time changing the shape, of the mold charges. However, we think that the claims define a method of controlling both the weight and shape of mold charges, and that they do not specify that either may be changed without, at the same time, changing the other. Nor may we read such a limitation into them. Such being the case, it is evident that the method defined in the appealed claims was claimed in the Peiler patent, and, as appellant is not entitled to another patent for the same invention, we must hold that the Board of Appeals reached the right conclusion.

The decision is affirmed.

Affirmed.